UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESSE VARGISON et al., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>PAULA'S CHOICE, LLC, et al.,<br><br>Defendants. | CASE NO. 2:24-cv-00342-TL<br><br>ORDER ON MOTION FOR CLARIFICATION |

This matter is before the Court on Defendant Paula's Choice, LLC's "Motion for Clarification Regarding January 30, 2025 Order." Dkt. No. 66. Having reviewed the motion, Plaintiffs' response (Dkt. No. 69), Paula's Choice's reply (Dkt. No. 70), and the relevant record, the Court GRANTS IN PART and DENIES IN PART Paula's Choice's motion.

I. BACKGROUND

This is a putative class action brought by 107 plaintiffs against Defendant Paula's Choice, a manufacturer and purveyor of skincare products, and two retailers that sell Paula's Choice products, Defendants Sephora USA and THG Beauty USA. *See generally* Dkt. No. 37 ("First

1 Amended Complaint"). At issue is the veracity of Paula's Choice's representations that its
2 products are "cruelty-free" and "never tested on animals," and consumers' reliance on those
3 representations. *See id.* ¶¶ 1–8. The Court assumes familiarity with Plaintiffs' First Amended
4 Complaint (Dkt. No. 37) and will not recite its factual allegations herein. *See* Dkt. No. 65 at 2–3
5 (explaining background of case). The Court also assumes familiarity with the specifics of Paula's
6 Choice's arbitration agreement, which the Court discussed at length in a prior order. *See id.*

7       On October 15, 2024, Paula's Choice filed a motion to compel arbitration and to stay
8 litigation as to eight specific plaintiffs: Julia Bartholomew-King, Paige Bridges, Dalit Cohen,
9 Joella Erriquez, Bridget Froelich, Maura McCartan, Dawn van der Steeg, and Kristiana Wright.
10 Dkt. No. 48. On November 19, 2024, Plaintiffs filed a response in opposition to Paula's Choice's
11 motion (Dkt. No. 57), and on December 20, 2024, Paula's Choice filed a reply (Dkt. No. 61). In
12 its reply, Paula's Choice added Plaintiff Samantha Simmons as a ninth plaintiff whom the Court
13 should compel to arbitrate her claims against the company. *See* Dkt. No. 61 at 20.

14       On January 30, 2025, the Court issued an order that granted in part and held in abeyance
15 in part Paula's Choice's motion to compel arbitration and stay litigation. Dkt. No. 65. In its
16 Order, the Court found that three of the Plaintiffs at issue—Cohen, Froelich, and McCartan—
17 were obliged to arbitrate their claims against Paula's Choice. *See* Dkt. No. 65 at 21. These
18 plaintiffs, the Court found, had "made at least one additional purchase on the Paula's Choice
19 website *after* Paula's Choice filed its motion to compel arbitration." *Id.* at 4 (emphasis in
20 original). The Court reasoned that, "As Named Plaintiffs in this case, and specifically as the
21 subjects of the instant motion to compel, these three Plaintiffs were put on notice of the existence
22 of the arbitration agreement (and their acceptance thereof upon making a purchase) when Paula's
23 Choice raised the issue in the ongoing litigation." *Id.* (first citing *Nicosia v. Amazon.com, Inc.*,

24

815 F. App'x 612, 613–14 (2d Cir. 2020); then citing *In re Ring LLC Privacy Litig.*, No. C19-10899, 2021 WL 2621197, at *7 (C.D. Cal. June 24, 2021)).

But as to the other five plaintiffs who were the original subjects of the motion to compel arbitration, the Court could not make a determination based on the record before it and, pursuant to the Federal Arbitration Act, held the motion in abeyance pending the outcome of a trial on the arbitrability of these Plaintiffs' claims. *See id.*; *see also* 9 U.S.C. § 4; *Hansen v. LMB Mortg. Serv., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). The Order did not discuss the arbitrability of Plaintiff Simmons's claims. *See generally* Dkt. No. 65.

On February 13, 2025, Paula's Choice filed the instant motion (Dkt. No. 66), asserting that the Court's prior order "did not address whether Ms. Simmons also is compelled to arbitrate" and "request[ing] confirmation that Ms. Simmons is compelled to arbitrate her claims for the same reason that the referenced three Named Plaintiffs . . . must arbitrate theirs—'post-motion purchases' obviously demonstrating assent" to Paula's Choice's arbitration agreement. Dkt. No. 66 at 2. On February 19, 2025, Plaintiffs filed a response in opposition to Paula's Choice's "request" (Dkt. No. 69), and on February 26, 2025, Paula's Choice filed a reply (Dkt. No. 70).

## II.  DISCUSSION

Plaintiff Simmons made purchases on the Paula's Choice website after Defendant Paula's Choice filed its Motion to Compel (Dkt. No. 48) but before it filed its Reply (Dkt. No. 61). Dkt. No. 66 at 2. The issue here is whether a valid agreement to arbitrate exists between Paula's Choice and Plaintiff Simmons. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). For the purpose of deciding this motion, the central texts are Paula's Choice's Motion to Compel Arbitration and Stay Proceedings as to Certain Named Plaintiffs

1  (Dkt. No. 48), Paula's Choice's reply in support of that motion (Dkt. No. 61), and the Court's
2  Order denying the motion in part and holding it in abeyance in part (Dkt. No. 65).
3  Paula's Choice observes that the Court's Order "did not address whether Ms. Simmons is
4  compelled to arbitrate her claims." Dkt. No. 66 at 2. Paula's Choice argues that, like the three
5  Plaintiffs whom the Court compelled to arbitrate in that order, Plaintiff Simmons "recently made
6  a purchase—indeed, *two* purchases—from Paula's Choice's website that were subject to its
7  Terms of Use after the Motion to Compel was filed." *Id.* at 3 (emphasis in original). "As a
8  Named Plaintiff, Ms. Simmons too was on notice of the arbitration agreement, and her
9  acceptance of it by making a purchase, once the Motion to Compel was filed." *Id.*
10  Plaintiffs respond that Plaintiff Simmons is not similarly situated to the three Plaintiffs
11  whom the Court compelled to arbitrate. *See* Dkt. No. 69 at 2. Unlike Plaintiffs Cohen, Froelich,
12  and McCartan, Plaintiffs argue, "Plaintiff Simmons was not the specific subject of the Motion to
13  Compel," and was not therefore "put on notice of the existence of the arbitration agreement" or
14  the ramifications of her acceptance of it. *Id.* The Court agrees.
15  When a defendant in a lawsuit such as this one updates its terms of use to include an
16  arbitration agreement, and a class action is filed on claims that accrued before that update—that
17  is, before the existence of an arbitration agreement—a class member's (or putative class
18  member's) acceptance of the new terms can have significant consequences on their accrued
19  claims. In this case, for example, the Plaintiffs are customers whose purchases of Paula's Choice
20  products pre-date Paula's Choice's arbitration agreement. *See* Dkt. No. 37 ¶¶ 1228–1231. When
21  they made those purchases, they did not agree to arbitrate with Paula's Choice any disputes that
22  might arise (or might have arisen) between themselves and the company. And, indeed, the instant
23  class action covers disputes that arose before the existence of the arbitration agreement. *See id.*
24

On or about March 14, 2023, Paula's Choice updated its terms of use to include a new arbitration agreement. *Id.* ¶ 1226. The arbitration agreement sweeps into its purview "any and all disputes or claims that arise or have arisen between [a customer] and Paula's Choice." Dkt. No. 65 at 2. Given this language, if a court found that a plaintiff in this case had agreed to the updated terms—which contain the new arbitration agreement—then that plaintiff's claims as a class member might be shunted out of court and directed toward arbitration, even those claims that had accrued before the arbitration agreement even existed.

Courts have recognized that this can pose a problem for class members and putative class members. It might be unfair when a company adds an arbitration agreement to its terms of service that, if executed, can claw back into arbitration claims that might already be the subject of pending class-action lawsuits—*i.e.*, "claims that *have arisen*" between customer and company. To protect class members and putative class members from "forfeiting their rights without really knowing what they are," courts "have found that a defendant's attempt to foist a new arbitration provision on putative class members is an improper communication" under Federal Rule of Civil Procedure 23(d). *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019) (collecting cases).

In practice, this leads to the principle that it is not appropriate to enforce an arbitration agreement that does not provide a class member—or putative class member—sufficient notice that their ability to participate in an *existing* class action against the defendant might be jeopardized by their assent to an arbitration agreement. *See, e.g.*, *Jimenez v. Menzies Aviation Inc.*, No. C15-2392, 2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015) ("Courts routinely exercise their discretion to invalidate or refuse to enforce arbitration agreements implemented while a putative class action is pending if the agreement might interfere with members' rights."). If someone is a class member (or putative class member), they need to be advised that their

agreement to terms of service that include a new arbitration agreement might quash their right to continue (or join) the pending class action. *See O'Connor v. Uber Techs., Inc.*, No. C13-3826, 2013 WL 6407583, at *6 (N.D. Cal. Dec. 6, 2013) (finding interference where arbitration provision "include[d] a class action waiver [that] purported to contractually bar Uber drivers from participating and benefitting from any class actions," including the "current class action"). This is what has happened to Plaintiff Simmons.

Plaintiffs assert that "Plaintiff Simmons . . . was not presented with an arbitration clause that would inform her that she was giving up her rights to continue as a class representative." Dkt. No. 69 at 4. Paula's Choice does not refute this and focuses exclusively on whether Plaintiff Simmons had any knowledge at all of the arbitration clause in its updated terms of use. *See* Dkt. No. 70 at 3. Paula's Choice's argument misses the point. The issue is not whether Plaintiff Simmons was aware of the new arbitration agreement; rather, it is whether Plaintiff Simmons was aware that the new arbitration agreement could affect her rights to continue as a plaintiff in the pending class action. And Paula's Choice provides no argument or evidence to indicate that the updated terms of use, as presented to class members such as Plaintiff Simmons, conveyed that information. Absent such an advisory, the arbitration clause is not enforceable. *See Jimenez*, 2015 WL 4914727, at *6. Put differently, Paula's Choice did not let Plaintiff Simmons know what she was getting into.

As to Paula's Choice's argument that the Court should consider Plaintiff Simmons to be similarly situated to Plaintiffs Cohen, Froelich, and McCartan, the Court disagrees. In compelling these Plaintiffs to arbitrate their claims, the Court explained: "As Named Plaintiffs in this case, *and specifically as the subjects of the instant motion to compel*, these three Plaintiffs were put on notice of the existence of the arbitration agreement (and their acceptance thereof

upon making a purchase) when Paula's Choice raised the issue in the ongoing litigation." Dkt. No. 65 at 4 (emphasis added).

Simply put, Plaintiffs Cohen, Froelich, and McCartan were specifically named in Paula's Choice's motion to compel arbitration (*see* Dkt. No. 48 at 6); Plaintiff Simmons was not. The motion provided Plaintiffs Cohen, Froelich, and McCartan with extensive notice as to the ramifications of their acceptance of the arbitration agreement in the company's updated terms of use. *See id.* at 16–18 (discussing the new arbitration agreement and explaining its effects on the claims of class members who agreed to it). Thus, when Plaintiffs Cohen, Froelich, and McCartan made their "post-motion purchases" on the Paula's Choice website, they did so with full knowledge that the updated terms of use included an arbitration agreement with a class-action waiver that applied to their existing claims. *See* Dkt. No. 48 at 17. Put another way, Paula's Choice's motion to compel specifically targeted the eight plaintiffs named in the motion and directly provided them with an advisory about their class-action rights vis-à-vis the arbitration agreement.

Plaintiff Simmons did not receive such an advisory, because Paula's Choice only sought to compel Plaintiff Simmons to arbitrate her claims in its reply brief. *See* Dkt. No. 61 at 18. She was not specifically targeted in the motion, and she was not directly provided with the advisory. Paula's Choice provided evidence demonstrating that Plaintiff Simmons had indeed made purchases on the company's website after it filed its motion to compel the other eight plaintiffs to arbitrate their claims. *See* Dkt. No. 62 ¶ 23. But prior to making those purchases, Plaintiff Simmons had not received the same notice regarding her rights as a class member that Plaintiffs Cohen, Froelich, and McCartan received by dint of their being the subjects of the motion to compel. Therefore, Plaintiff Simmons was not similarly situated to the other three Plaintiffs, and it is thus inappropriate to compel her to arbitrate her claims on the same basis. *See Kater*, 423 F.

Supp. 3d at 1065 (ordering defendant to "separate its communication with putative class members from those with general customers" such that putative class members received notice of "what they [were] giving up by agreeing to the Terms").

Therefore, the Court DENIES Paula's Choice's request that Plaintiff Simmons be compelled to arbitrate her claims.

### III. CONCLUSION

Accordingly, the Court ORDERS:

(1) Defendant Paula's Choice's "Motion for Clarification Regarding January 30, 2025 Order" (Dkt. No. 66) is GRANTED; this Order provides the requested clarification.

(2) Defendant Paula's Choice's request that Plaintiff Simmons be compelled to arbitrate her claims is DENIED.

Dated this 13th day of March 2025.

Tana Lin
United States District Judge